**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REBECCA DETTLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 5700 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff's counsel has filed a second motion for approval of attorney's fees to be paid to him out of the plaintiff's past-due benefits pursuant to 42 U.S.C. §406(b). On remand from this court, an Administrative Law Judge for the Social Security Administration determined that plaintiff was disabled and entitled to benefits, including $71,449.00 in past-due benefits. Plaintiff and her counsel had a contingency fee agreement whereby she would pay counsel 25% of any such award which, in this case, would come to $17,862.25.

There were some concerns with counsel's previous motion. First, there was some wording in the motion that made it appear that a result of an error, the agency failed to withhold the 25% fee and sent the full amount to the plaintiff. Counsel said he wanted the court's approval to charge his client. Of course, if this were the case, counsel's remedy would be against his client in a separate proceeding. And so, the previous order could not have been clearer: the question was, had the agency withheld a portion of the plaintiff's recovery for fees or not? [Dkt. # 41, at 1-2].

This time around, counsel did not answer that question directly, but did state:

> While the undersigned did represent at the administrative level, and the normal procedure of the Administration is to pay counsel 406(a) fees of $6000.00, in this case no 406(a) fees have been paid to counsel. Plaintiff informs the Court of this fact as normally, there is an offset sought from the 406(b) fees, based on the amount of the 406(a) fees received by counsel. At this point there is no offset in this case. If the Commissioner were to pay the undersigned counsel the $6000.00 for 406(a) fees for work at the administrative level, an additional $11,862.25 would be owing under section 406(b).

[Dkt. #43, ¶6].

As counsel does not indicate that he wants to charge his client this time around, but will be receiving his fee from the agency as is the normal procedure, we take this as answering our inquiry.

We were also concerned with the fact that counsel had filed his motion without the approval of the agency. Given the local rule mandating consultation with an opponent before the filing of a fee petition, N.D.Ill. L.R. 54.3, and the fact that most §406(b) petitions come with the *imprimatur* of the agency – *i.e.*, a statement in the motion indicating that the government has no objection to the amount of fees sought in the motion. With the agency serving as a trustee of sorts for the plaintiff, *see Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002), the agency's approval is, while not dispositive, certainly influential. Counsel's previous motion gave the impression that the agency was opposed to the amount he sought. Either that, or simply had not consulted the agency before filing. It turns out it was the latter, and counsel now – the second time around – assures us that the agency does not oppose the amount sought.

The final issue was the amount sought and the manner in which counsel went about supporting it. While *Gisbrecht* held that the lodestar method does not rule the day in these cases, an attorney must still show that, even within the 25% contingency fee boundary, the amount he seeks as recompense is reasonable. 535 U.S. at 807. He is not entitled to a "windfall", and so, his

2

customary hourly fee is still relevant to the reasonableness inquiry. 535 U.S. at 808. Here, the fee counsel seeks amounts to $622 per hour – a bit more than double his customary hourly rate of $300 and well over double the $250 rate he charges for the associate who did 25.2 of the 28.7 hours of work in this case. Cognizant of this high rate, counsel spent a large portion of the research and analysis in his original motion on this issue. But he was able to find only one case from this area in which the court approved such a high hourly rate. [Dkt. # 41, at 3].

Counsel resorted to asserting that attorneys taking disability cases to district court have just a 35% success rate at obtaining an award of benefits, as a result of the district courts remanding 48% of ALJ denials, of which 60% result in a grant of benefits (in a further 6%, the district courts order an award of benefits. *See Maritnez v. Astrue*, 630 F.3d 693, 695 (7th Cir. 2011). The idea that counsel clearly wanted to get across, and that had been accepted in the one case that supported a rate comparable to what he sought here, was that the high risk reduced the effective rate he would receive. But, in our previous order, we pointed out that, once a social security attorney loses a case at the district court level, he has a great opportunity to win at the appellate court level, as the Seventh Circuit reverses about 70% of the benefit denials it sees. [Dkt. #41, at 4]. That made the risk not so great as counsel suggested, or so it seemed.

The reasonableness of contingency fee awards is all about risk and reward. As Justice Scalia has explained, it is:

> obvious that the reasonableness of a contingent-fee arrangement *has to be* determined by viewing the matter *ex ante,* before the outcome of the lawsuit and the hours of work expended on the outcome are definitively known. For it is in the nature of a contingent-fee agreement to *gamble* on outcome and hours of work—assigning the risk of an unsuccessful outcome to the attorney, in exchange for a percentage of the recovery from a successful outcome that will (because of the risk of loss the attorney has borne) be higher, and perhaps much higher, than what the attorney would receive

in hourly billing for the same case.

*Gisbrecht*, 535 U.S. at 809-810(Scalia, J., dissenting)(emphasis in original)).

This time around, counsel submits that he has performed a Westlaw search of all Illinois district court opinions from January 1, 2014, through June 1, 2015, with the defendant Colvin. He states that the search came up with 459 opinions but that a similar search of Seventh Circuit cases resulted in just 30 opinions. In other words, according to counsel, only a small percentage of losses at the district court level are ever appealed. So, his gamble is very risky, and his effective rate in a case like this ends up being significantly less than the hourly rate he charges.

We undertook a similar search of Northern District of Illinois opinions from the same time frame. We culled from those results all Colvin defendant opinions that did not deal with the ALJ's decision on benefits – such as EAJA opinions, 406(b) opinions, opinions resolved on procedural issues, etc. – and cases where the plaintiff was unrepresented. The search resulted in 317 cases. Taking the search a step further, the results were interesting. Plaintiffs were successful in 220 of those cases, or about a 70% clip. That's a huge increase in success rate from the statistics drawn from *Martinez*, which are now more than a decade old. 630 F.3d at 695 (citing figures from 2003 and 2004). It also is a huge increase in the amount of cases in which an attorney is eligible for, albeit not necessarily entitled to, an award of EAJA fees. So the risk at the district court level has declined significantly. It's not as much of a longshot as counsel suggests. As they say at the betting window, "the trend is your friend."

Once those cases are remanded, the success rate is likely quite good.[1] From 1999 through

---

[1] Counsel asserts that the award rate on remands to ALJs is just 45%. The source he cites for this statistic, a blog post on a the website of a research institute, is based on statistics for 2014 alone and does
(continued...)

2010, ALJ's awarded benefits in all cases with hearings at a 64-66% rate. http://www.ssa.gov/policy/docs/statcomps/di_asr/2011/sect04.html. That's comparable to the rate cited in *Martinez*, 630 F.3d at 695. So the overall award rate would translate to something in the neighborhood of 50%. (.66 x .70 = .46) when the appellate success rate on the 30 appeals counsel cites is thrown in. That's much better than the 35% rate counsel supported his initial motion with. It's not the roll of the dice counsel makes it out to be, but more like a flip of a coin.

All this is not to say that, having cleaned up his presentation form his first filing, counsel should still be subject to a reduction to avoid a "windfall", which was the concern based on his original filing. With more information, including the fact that the agency does not consider the award to be unreasonable, we see no reason to reduce the amount sought. Indeed, given what appears to be about a 50% success rate in these cases, the effective rate counsel receives in this case comes to just a bit over his hourly rate and 20% over his associate's hourly rate. But it is to say that lawyers ought not to be so reliant on the risk factor in supporting an effective rate. A 50-50 shot in a Social Security disability case does not seem much more risky than any other type of case – and maybe not as much.

---

[1](...continued)
not indicate the award rate on remands. (http://www.cbpp.org/blog/disability-allowance-rates-fall-as-social-security-strengthens-oversight (but when this link was clicked on June 18, 2015, webpage stated there were "No blog posts to display at this time"). Presumably the award on cases remanded would be higher than on cases that had not been overturned by the district court or the appellate court.

## CONCLUSION

The motion for approval of attorney's fee [Dkt. # 43] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/22/15